**SANDWEG & AGER, P.C.**
John P. Ager, #018199
1221 E. Osborn Road, Suite 100
Phoenix, Arizona 85014-5540
Telephone: (602) 648-3200
Facsimile: (602) 648-3208
E-mail: jpa@sa-firm.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Buffington, surviving spouse of decedent Savannah Skenandore, individually, and as and as statutory trustee for statutory beneficiaries, Atticus C. Buffington and Atreyu D. Buffington, surviving children of decedent, Darlene Francis, surviving mother of decedent, and Walter Davis, surviving father of decedent,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**Wrongful Death**<br>**Federal Tort Claim** |

Plaintiff Michael Buffington, on his own behalf and on behalf of statutory beneficiaries Atticus C. Buffington, Atreyu D. Buffington, Darlene Francis and Walter Davis (collectively "Plaintiff"), for his cause of action against Defendant United States of America alleges as follows.

**PARTIES, JURISDICTION AND VENUE**

1. Michael Buffington is the surviving spouse of Savannah Skenandore ("Decedent"). Michael Buffington is entitled to bring this cause of action individually and on behalf of Atticus C. Buffington and Atreyu D. Buffington, the surviving children

of Decedent, Darlene Francis, the surviving mother of Decedent and Walter Davis, the surviving father of Decedent, pursuant to A.R.S. § 12-611 *et. seq.* ("Plaintiff's Cause of Action.")

2.  Defendant, through its employees, agents and/or contractors ("Defendant's Medical Personnel"), caused events to occur within the State of Arizona out of which Plaintiff's Cause of Action arises.

3.  Plaintiff's Cause of Action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680. Defendant's Medical Personnel were federal employees for the purpose of invoking the Federal Tort Claims Act at all times material to Plaintiff's Cause of Action.

4.  Defendant was acting through the Chinle Comprehensive Health Care Facility ("CCHCF"), a 501(c)(3) health care organization chartered under the laws of the Navajo Nation at all times material to Plaintiff's Cause of Action. CCHCF entered into contracts with Defendant through the Indian Health Service to operate CCHCF pursuant to Public Law 93-638 making Plaintiff's claims cognizable under federal law.

5.  Defendant is responsible for money damages arising from Decedent's death caused by the negligent acts and/or omissions of Defendant's Medical Personnel while providing medical services pursuant to its contracts with CCHCF.

6.  The United States District Court for the District of Arizona has exclusive original jurisdiction of Plaintiff's claims against Defendant for Decedent's death caused by the negligent acts and/or omissions of Defendant's Medical Personnel while acting within the course and scope of their employment, agency or contract.

7.  Defendant's Medical Personnel were acting as employees, agents or contractors of Defendant within the course and scope of their employment, agency or contract at all times material to Plaintiff's Cause of Action.

8. Defendant is vicariously liable for the negligence of Defendant's Medical Personnel while acting within the course and scope of their employment, agency or contract

9. The Federal Tort Claims Act, 28 U.S.C. § 2402, does not provide for a jury trial of this cause of action. Plaintiff's Cause of Action is to be presented as a trial to the Court.

10. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(a) because the District of Arizona is the location where all of the events material to Plaintiff's Cause of Action occurred.

11. Plaintiff filed an administrative claim with the United States Department of Health and Human Services and Indian Health Services more than six months before this action was instituted pursuant to 28 U.S.C. § 5(a). Neither agency responded.

**GENERAL ALLEGATIONS**

12. At all times material to Plaintiff's Cause of Action, Defendant operated CCHCF which provides medical care to patients in need.

13. Defendant's Medical Personnel, including but not limited to Maybelle Whu, M.D., fell below the standard of care applicable to them while acting in the course of their employment, agency or contract, causing harm to Decedent, for which Defendant is vicariously liable pursuant to the doctrine of *respondeat superior*.

14. At all times material to Plaintiff's Cause of Action, Defendant represented and held out to the public, and in particular to Decedent, that CCHCF was equipped, qualified and prepared to receive the public, and in particular, Decedent, for treatment and care and that it employed and maintained on its staff skilled and competent physicians, physician assistants, nurses, aides, technicians, therapists, and other healthcare-related personnel to conduct and operate CCHCF.

15. Defendant was responsible for the operation of CCHCF, for the selection

3

and supervision of its medical staff, and for the quality of care rendered at CCHCF pursuant to Arizona law.

16. Defendant's Medical Personnel who treated Decedent at CCHCF, including but not limited to Dr . Whu, owed a duty to Plaintiff and Decedent to act in accordance with the applicable standard of care.

17. Jurisdiction and venue are proper.

## FACTUAL ALLEGATIONS

18. Plaintiff's Cause of Action arises out of the negligent acts of Defendant and Defendant's Medical Personnel, all of whom were Defendant's employees, agents, or contractors at the time and place of the medical negligence alleged in this Complaint.

19. Decedent died on August 21, 2019.

20. Defendant's Medical Personnel negligently provided Decedent medical care which was a direct and proximate cause of her death.

21. Decedent was seen at the CCHCF emergency department on August 15, 2019 complaining of coughing and shortness of breath.

22. She was evaluated by Loretta Craig, FNP.

23. Decedent's heart rate was elevated and her oxygen saturation level was low.

24. Decedent received a nebulizer treatment and was discharged.

25. Decedent returned to the CCHCF emergency department on August 17, 2019 again complaining of shortness of breath, along with wheezing, cold symptoms for a week, and a cough that was often nonstop.

26. Decedent was evaluated by Dr. Whu.

27. Decedent informed Dr. Whu that she was treated in the CCHCF emergency department with a nebulizer two days earlier and felt better for a while, but then things got worse.

28. Decedent had abnormal respiration with dyspnea, tachypnea at 32 breaths/minute, and tachycardia with a heart rate of 135. She had "very diminished breath sounds bilateral lower lobes", "very poor inspiratory flow", and "very, very tight expiratory wheeze with forced expiration".

29. Dr. Whu diagnosed Decedent with "asthmatic bronchitis" due to either underlying asthma with exacerbation, pneumonitis, or pulmonary embolus. Dr. Whu's secondary diagnosis appears to have been "sinus tachycardia" due to hyperthyroidism, pulmonary embolus, or mild dehydration.

30. Dr. Whu ordered prednisone and a nebulizer treatment.

31. Dr. Whu did not order any tests to rule out any of the conditions stated in her primary or secondary diagnoses.

32. After a while, Decedent told Dr. Whu she was anxious to go home because she had a four-month old baby at home who was still breast feeding, as well as a two-year-old. Although she was still tachycardic, Dr. Whu discharged Decedent at 1:30 a.m. on August 18, 2019 with "an albuterol inhaler and prednisone burst over 5 days". She was instructed to return to the emergency department if her symptoms worsened.

33. On the morning of August 19, 2019, Decedent collapsed suddenly when she tried to get out of bed. She was taken to the CCHCF emergency department by ambulance at 5:40 a.m.

34. She was again seen by Dr. Whu. Decedent reported she felt some pain in her right leg and had collapsed when she stood up. She also reported substernal chest pain, shortness of breath and a fast heartrate. Her pulse was 151, her respiratory rate was 40 and her oxygen saturation was 91%.

35. A CT pulmonary angiogram interpreted by Jose Ospina, M.D. revealed a large burden of pulmonary emboli involving the bilateral main pulmonary arteries and

all pulmonary lobes and a thin saddle embolus. She was started on heparin and transported by air to Banner University Medical Center at 10:55 a.m.

36. When Decedent arrived at Banner University Medical Center both legs were cool and dusky and there were no pulses on either side. Banner immediately started life-saving measures in an attempt to stabilize Decedent, including an interventional radiology procedure to remove the saddle embolus.

37. Unfortunately, it was too late to save her and Decedent died from obstructive cardiogenic shock as a result of acute pulmonary embolism.

38. Dr. Whu and Defendant's Medical Personnel should have recognized pulmonary embolism is an emergent, life-threatening condition which must be ruled out in an emergency department patient where it is suspected. Had Dr. Whu ordered appropriate testing or consulted with another physician on August 17 or 18, 2019, she would have discovered pulmonary embolism was the cause of Decedent's symptoms, appropriate treatment would have been ordered, and Decedent would not have died.

38. As a direct and proximate result of the negligence of Defendant and Defendant's Medical Personnel, pulmonary embolism caused Decedent's death on August 21, 2019.

39. As a direct and proximate result of the negligence of Defendant and Defendant's Medical Personnel, Plaintiff has suffered, and will continue to suffer, a loss of love, affection, companionship, care, support, protection, comfort and guidance as a consequence of Decedent's death.

40. As a direct and proximate result of the negligence of Defendant and Defendant's Medical Personnel, Plaintiff has suffered, and will continue to suffer, pain, grief, sorrow, anguish, stress, shock, and severe and grievous emotional distress as a consequence of Decedent's death.

**PRAYER FOR RELIEF**

42. Plaintiff is entitled to a judgment against Defendant in an amount determined by the Court to be full, fair, and reasonable compensation for the death of Decedent plus taxable costs, and interest.

43. Such damages are cognizable and recoverable under Arizona law pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 1402(b).

44. Plaintiff's Cause of Action arises under Arizona law and Arizona law is to be applied to it. See 28 U.S.C. § 1346(b)(1) (the Court is to apply the law of the state in a FTCA claim).

WHEREFORE, Plaintiff requests the Court grant relief that is just, reasonable, and equitable, against Defendant as follows:

1. For general damages suffered by Plaintiff for the death of Decedent in an amount to be proven at trial;

2. For special damages, including but not limited to past and future expenses, loss of income, loss of household services and other expenses associated with the Decedent's death;

3. For post judgment interest;

4. For attorney's fees;

5. For the costs incurred in prosecuting this matter; and

6. For such other and further relief as the Court deems fair, appropriate and available pursuant to the Federal Tort Claims Act.

DATED:  March 16, 2021

**SANDWEG & AGER, P.C.**

By /s/ John P. Ager
John P. Ager
1221 E. Osborn Road, Suite 100
Phoenix, Arizona 85014-5540
Attorneys for Plaintiffs